Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| JUAN SUÁREZ RENDÓN, MARÍA J. SUÁREZ RIVERA, WANDA Y. SUÁREZ RIVERA<br><br>Recurridos<br><br>v.<br><br>JUAN SUÁREZ RIVERA<br><br>Peticionario | KLCE202500488 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Municipal de Fajardo<br><br>Caso Núm.: FAL1212025-1344<br><br>Sobre: Solicitud de Orden de Protección Ley Núm. 121-2019 |

Panel integrado por presidenta, la Juez Brignoni Mártir,[1] la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 13 de junio de 2025.

Comparece Juan Suárez Rivera (en adelante, peticionario) mediante un recurso de *Certiorari* para solicitarnos la revisión de la *Orden de Protección* emitida el 3 de abril de 2025, por el Tribunal de Primera Instancia, Sala Municipal de Fajardo.[2] Mediante la *Orden de Protección* recurrida, el foro de instancia concedió el remedio solicitado por la parte recurrida. A tenor, expidió una orden de protección a favor de Juan Suárez Rendón (en adelante, adulto mayor).

Por los fundamentos que expondremos, se *deniega* la expedición del auto de *Certiorari.*

I

Según se desprende de los autos ante nuestra consideración, el 28 de febrero de 2025, el adulto mayor, y dos (2) de sus tres (3)

---

[1] Mediante la Orden Administrativa TA-2025-070 del 9 de mayo de 2025, se designó a la Hon. Maritere Brignoni Mártir para entender y votar en el caso de epígrafe en sustitución del Hon. Abelardo Bermúdez Torres.
[2] Apéndice 1 del recurso, a las págs. 1-5.

Número Identificador

RES2025_____

hijos, María J. Suárez Rivera y Wanda Y. Suárez Rivera (en conjunto, parte recurrida), presentaron una *Petición de orden de protección para el adulto mayor,*[3] al amparo de la Ley 121-2019.[4] Alegaron que el peticionario, quien también es hijo del adulto mayor, le había: (i) causado daño a su salud, bienestar, integridad o a sus bienes; (ii) expuesto al riesgo de sufrir daño a su salud, bienestar, integridad o a sus bienes, y (iii) privado de tener descanso adecuado y de disfrutar de un ambiente de tranquilidad y solaz. A tenor, solicitaron, en síntesis, que se expidiera una orden de protección a favor del adulto mayor.

De lo que sigue, el 3 de abril de 2025, se expidió *la Orden de Protección recurrida.*[5] La misma, fue expedida con una vigencia desde el 3 de abril de 2025, hasta el 3 de octubre de 2025.

Como parte del dictamen emitido, el foro recurrido dispuso que el adulto mayor había sido víctima de maltrato provocado por el peticionario, quien fue consistente en haberle: (i) causado daño a su salud, bienestar, integridad o a sus bienes; (ii) expuesto al riesgo de sufrir daño a su salud, bienestar, integridad o a sus bienes, y (iii) privado de tener descanso adecuado y de disfrutar de un ambiente de tranquilidad y solaz.[6]

Por otro lado, luego de evaluar la prueba recibida, determinó como hechos probados los siguientes:

> El peticionario es padre del peticionado. Peticionario no desea que peticionado se acerque al hogar. Siente que el peticionado no se preocupa por él, ni por su salud. Peticionairo [*sic*] quiere vivir en paz y tranquilidad. Las partes tienen mala relación entre ellos.
>
> El día 7 de abril de 2025 sacará sus pertenencias.[7]

En virtud de lo anterior, el foro de instancia concedió una *Orden de Protección* a favor del adulto mayor, la cual constituye la

---

[3] Apéndice 2 del recurso, a las págs. 6-9.
[4] Carta de Derechos y la Política Pública del Gobierno a Favor de los Adultos Mayores, Ley Núm. 121-2019, 8 LPRA sec. 1511 *et seq.*
[5] Apéndice 1 del recurso, a las págs. 1-5.
[6] *Íd.,* a la pág. 2.
[7] *Íd.,* a la pág. 3.

determinación recurrida. El foro recurrido estableció, como vigencia para la orden de protección, un término desde el 3 de abril de 2025, hasta el 3 de octubre de 2025. En la determinación recurrida, el tribunal *a quo* ordenó lo siguiente:

[. . .]

b) Ordenar a la parte peticionada abstenerse de molestar, hostigar, perseguir, intimidar, amenazar o de cualquier otra forma interferir con el ejercicio de los derechos que se le reconocen a la parte peticionaria de esta Ley.

c) Ordena a la parte peticionada abstenerse o penetrar en cualquier lugar donde se encuentre la parte peticionaria o estar en sus alrededores.

[. . .]

e) Prohíbe a la parte peticionada comunicarse con la parte peticionaria por cualquier medio ya sea verbal, escrito, telefónico, electrónico o cualquier otro método de comunicación; por s[í] misma o a través de terceras personas.

[. . .]

Posteriormente, el 7 de abril de 2025, el peticionario instó una *Moción informativa sobre imposibilidad de cumplimiento con fecha de remoción de pertenencias.*[8] Expuso que, conforme a la determinación del foro de instancia, sus pertenencias de la propiedad debían ser recogidas el 7 de abril de 2025. Alegó que, dado a ciertas circunstancias, no podría cumplir en la antedicha fecha por lo que solicitó que se advirtiera a la parte recurrida a no disponer, alterar, eliminar o remover las mismas. En respuesta, mediante *Orden* del 9 de abril de 2025, el foro *a quo* quedó enterado.[9]

Luego, el 11 de abril de 2025, una de las hijas del adulto mayor, María J. Suárez Rivera, presentó una *Moción informativa y petición de orden.*[10] Adujo, en síntesis, que el peticionario no había cumplido con remover sus pertenencias de la vivienda, por lo que solicitó que se ordenara el cumplimiento.

---

[8] Véase Anejo 1, en la *Moción solicitando auxilio de jurisdicción para que se ponga en suspenso la orden del TPI de que el recurrente tenga que sacar sus pertenencias de la propiedad que no utiliza el rec[u]rrido, que está postrado en cama.*
[9] *Íd.*, en el Anejo 2.
[10] *Íd.*, en el Anejo 3.

De lo que se desprende de los autos, se encontraba una vista señalada para dilucidar este asunto. A tenor, se ordenó la celebración de la vista el 16 de mayo de 2025.[11]

En el interín, y tras haber quedado inconforme con el resultado de la vista sobre orden de protección, el 5 de mayo de 2025, el peticionario presentó ante nos un recurso de *Certiorari* en el cual esgrimió la comisión de los siguientes dos (2) señalamientos de error:

> **PRIMER ERROR:** ERRÓ EL TPI Y ABUS[Ó] DE SU DISCRECIÓN AL VIOLENTAR EL DEBIDO PROCESO DE LEY AL EXPEDIR UNA ORDEN DE PROTECCIÓN SIN CUMPLIR LOS CRITERIOS ESTATUTARIOS DE LA LEY NÚM. 121 DE 1 DE AGOSTO DE 2019, SEGÚN ENMENDADA[.]

> **SEGUNDO ERROR:** ERRÓ EL TPI Y ABUS[Ó] DE SU DISCRECIÓN AL ORDENAR AL RECURRENTE [A] REMOVER SUS PERTENENCIAS DE PARTE DE LA PROPIEDAD QUE NO UTILIZA EL RECURRIDO QUE ESTÁ POSTRADO EN UNA CAMA.

Junto al recurso, el peticionario presentó una *Moción solicitando auxilio de jurisdicción para que se ponga en suspenso la orden del TPI de que el recurrente tenga que sacar sus pertenencias de la propiedad que no utiliza el rec[u]rrido, que está postrado en cama.*

Examinada la moción, mediante *Resolución,* emitida el 5 de mayo de 2025, declaramos *No Ha Lugar* la solicitud en auxilio de jurisdicción.  Además, concedimos al peticionario hasta el 9 de mayo de 2025, para acreditar el cumplimiento con la Regla 33(A) y al Regla 33(B) del Reglamento del Tribunal de Apelaciones.[12]

Mediante escrito, presentado por el peticionario el 8 de mayo de 2025, acreditó el cumplimiento con nuestra *Resolución* del 5 de mayo de 2025.

---

[11] Véase Anejo 5, en la *Moción solicitando auxilio de jurisdicción para que se ponga en suspenso la orden del TPI de que el recurrente tenga que sacar sus pertenencias de la propiedad que no utiliza el rec[u]rrido, que está postrado en cama.*
[12] 4 LPRA Ap. XXII-B, R.33(A) y (B).

Por otro lado, mediante *Resolución* del 9 de mayo de 2025, concedimos al peticionario hasta el 27 de mayo de 2025, para presentar la transcripción de la prueba oral (TPO) e informar si iba a presentar un alegato suplementario, y a la parte recurrida hasta el 6 de junio de 2025, para presentar sus objeciones a la TPO. Además, concedimos treinta (30) días, a partir de que expirara el término para presentar las objeciones a la TPO, para que el peticionario presentara su alegato suplementario, y el mismo término a la parte recurrida, para presentar el alegato en oposición.

Además, ordenamos al foro de instancia a proveernos la regrabación de la vista celebrada, así como que nos facilitaran los autos originales del caso del título.

Puntualizamos que, tanto la grabación de los procedimientos acaecidos durante la vista de protección, así como los autos originales del caso, fueron recibidos en este Tribunal.

Es menester señalar que, **luego de presentado el recurso** ante nos y tal cual reseñamos previamente, el foro de instancia tenía programada una vista en torno al caso de autos. Pudimos constatar de los autos ante el TPI que, celebrada la antedicha vista, el 16 de mayo de 2025, el foro de instancia emitió una *Orden de protección para el adulto mayor* **enmendada**.[13] El antedicho **dictamen enmendado** fue suscrito con la fecha original en la cual se emitió la determinación recurrida, entiéndase, 3 de abril de 2025, pero fue notificada el 19 de mayo de 2025.

La enmienda a la orden de protección original consistió en añadir ciertas determinaciones de hechos a la determinación recurrida. Las determinaciones de hechos emitidas quedaron de la siguiente forma:

> El peticionario es padre del peticionado. Peticionario no desea que peticionado se acerque al hogar. Siente que el peticionado no se preocupa por él, ni por su salud.

---

[13] Véanse los autos originales del caso del título ante el TPI.

Peticionairo (sic) quiere vivir en paz y tranquilidad. Las partes tienen mala relación entre ellos.

El día 7 de abril de 2025 sacará sus pertenencias.

**El adulto mayor no puede moverse por s[í] mismo. Actualmente la habitación del adulto mayor está ubicada en un segundo piso. Tanto los peticionarios, como el peticionado acordaron colaborar, para habilitar el primer piso de la residencia. Así, el adulto mayor podría ser trasladado al primer piso.**

**Las partes acordaron que el peticionado moverá las pertenencias que están en el primer nivel de la casa. Por acuerdo entre las partes, el peticionado sacará sus pertenencias del primer nivel de la propiedad, el día sábado, 24 de mayo de 2025, a partir de las 10:00 de la mañana.**[14]

De lo que sigue en el trámite ante nos, el 27 de mayo de 2025, el peticionario presentó una *Moción informativa y radicación de transcripción autorizada e informando intención de presentar alegato suplementario*. En respuesta, mediante *Resolución*, emitida el 28 de mayo de 2025, dimos por cumplido lo ordenado en cuanto a la presentación de la transcripción de la prueba oral y, **vista la misma, dispusimos que el peticionario tendría hasta el 9 de junio de 2025, para presentar el alegato suplementario.** Por otro lado, concedimos a la parte recurrida hasta el 6 de junio de 2025, para presentar sus objeciones a la transcripción de la prueba oral.

Habiendo decursado el término concedido a la parte recurrida para presentar sus objeciones a la transcripción de la prueba oral sin haberlo hecho, disponemos acoger la misma. Por otro lado, habiendo decursado el término concedido al peticionario para presentar su alegato suplementario sin haberlo hecho y dado a que, conforme a la Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones,[15] este Tribunal tiene la facultad de prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos en cualquier caso ante su consideración, con el propósito de lograr su más justo y eficiente despacho,

---

[14] Véanse los autos originales del caso del título ante el TPI. Las determinaciones de hechos que fueron añadidas de acuerdo con el dictamen enmendado están en negritas.

[15] 4 LPRA Ap. XXII-B, R.7 (B)(5).

eximimos a la parte recurrida de presentar escrito en oposición al recurso de *Certiorari* ante nos. En consideración a lo anterior, hemos acordado disponer del presente recurso.

II

## A. Revisión de Ordenes de Protección

Es norma harta conocida que el foro adecuado para revisar órdenes de protección emitidas por el Tribunal de Primera Instancia es el Tribunal de Apelaciones.[16] Ello, puesto a que la Ley de la Judicatura[17] otorga competencia exclusiva al referido foro apelativo para revisar cualquier resolución y orden emitida por el foro primario mediante un auto de *certiorari* expedido a su discreción.[18]

Establecido lo anterior, precisa señalar que el recurso de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[19] A diferencia del recurso de apelación, el auto de *certiorari* es de carácter discrecional.[20] La discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[21] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[22] Por otro lado, la Regla 40 del Reglamento del Tribunal de Apelaciones esgrime que el Tribunal deberá considerar los siguientes criterios para expedir un auto de *certiorari:*

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

---

[16] *Pizarro Rivera v. Nicot*, 151 DPR 944, 956 (2000).

[17] Artículo 4.006 (b) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley 201-2003, 4 LPRA sec. 24y.

[18] *Pizarro Rivera v. Nicot*, supra, 955.

[19] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023)*; 800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020).

[20] *Rivera Figueroa v. Joes's European Shop*, 183 DPR 580, 596 (2011).

[21] *Mun. de Caguas v. JRO Construction, Inc.* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013).

[22] *SLG Zapata-Rivera v. J.F. Montalvo,* supra, a la pág. 435.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. [23]

Precisa señalar que el Tribunal Supremo de Puerto ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[24] Quiérase decir que, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[25]

Finalmente, advertimos que la denegatoria a expedir un recurso discrecional no implica la ausencia de error en el dictamen cuya revisión se solicitó, como tampoco constituye una adjudicación en sus méritos. Meramente, responde a la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia.[26]

---

[23] 4 LPRA Ap. XXII-B, R.40.

[24] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994).

[25] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

[26] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008).

III

Ante nuestra consideración se encuentra pendiente la revisión de una determinación emitida por el foro de instancia mediante la cual se expidió una orden de protección, a favor de un adulto mayor y en contra de uno de sus hijos. Como parte de los remedios emitidos, el peticionario tenía la obligación de remover ciertos bienes de la propiedad en la cual reside el adulto mayor. Tras haber quedado insatisfecho con lo resuelto por el tribunal recurrido, el peticionario acudió mediante una petición de *certiorari* ante esta Curia y alzó dos (2) errores. El *primer* error que se levantó fue que el foro primario falló en emitir la antedicha orden de protección sin que se hubiesen cumplido los criterios estatutarios de la Ley Núm. 121.[27] Por otro lado, como *segundo* error, el peticionario esgrimió que el tribunal *a quo* incidió al ordenarle a remover las pertenencias de la propiedad, puesto a que el adulto mayor no la utilizaba, por estar postrado en una cama.

Luego de haber examinado el derecho aplicable y estudiado con detenimiento la totalidad del expediente ante nuestra consideración, el cual incluyó la petición de *Certiorari,* la regrabación de los procedimientos de la vista de orden de protección, la transcripción de la prueba oral y los autos originales del caso ante el tribunal de instancia, este Tribunal concluye que el peticionario no logró que el foro primario hubiese incurrido en error alguno, que justifique nuestra intervención en este caso. Entiéndase, que los señalamientos de error y los fundamentos aducidos en la petición presentada no logran activar nuestra función discrecional en el caso de autos. Por tanto, coincidimos en que el dictamen recurrido encuentra cómodo resguardo en la sana discreción de la primera instancia judicial. Además, razonamos que el peticionario no nos ha

---

[27] 8 LPRA sec.1511.

persuadido de que, al aplicar la norma de abstención apelativa en este momento, conforme al asunto planteado, constituirá un rotundo fracaso de la justicia. Por todo lo antes mencionado, no atisbamos razón para intervenir con la determinación recurrida. En consecuencia, y en virtud de la Regla 40 del Reglamento de este Tribunal,[6] resolvemos *denegar* la expedición del auto de *Certiorari*.

Lo aquí resuelto, advertimos, no tiene efecto de juzgar o considerar en los méritos ninguna de las controversias de derecho planteadas por las partes. Es decir, la denegatoria de esta Curia a expedir un recurso de *Certiorari* no implica que el dictamen revisado esté libre de errores o que constituya una adjudicación en los méritos.[28] Esto es así, ya que, como es sabido, una resolución de denegatoria de un auto de *Certiorari* no implica posición alguna de este Tribunal respecto a los méritos de la causa sobre la cual trata dicho recurso.[29]

IV

Por los fundamentos que anteceden, se *deniega* la expedición del auto de *Certiorari*.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[28] *Cacho Pérez v. Hatton Gotay*, 195 DPR 1, 12 (2016).
[29] *SLG v. Pauneto Rivera*, 130 DPR 749, 755 (1992).